UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CATALINA RIVERA,<br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | CIVIL NO. 3:18-CV-0073 (KAD)<br><br><br><br><br><br><br><br>DECEMBER 14, 2018 |

**MEMORANDUM OF DECISION RE:**
**PLAINTIFF'S MOTION TO REVERSE [ECF NO. 19] AND**
**DEFENDANT'S MOTION TO AFFIRM [ECF NO. 20]**

Kari A. Dooley, United States District Judge

The Plaintiff, Catalina Rivera, brings this administrative appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). She appeals the decision of defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, (the "Commissioner") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act (the "Act"). Rivera has moved to reverse the Commissioner's decision on the grounds that it is not supported by substantial evidence in the record. The Commissioner has also moved for an order affirming its decision. For the reasons set forth below, Rivera's motion is DENIED, and the Defendant's motion is GRANTED.

**Standard of Review**

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can reject the Commissioner's findings of facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.* 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On September 9, 2014, Rivera filed an application for supplemental security income benefits pursuant to Title XVI of the Act and an application for disability insurance benefits pursuant to Title II of the Act.[1] Although she initially alleged a disability onset date of August 27, 2014, Rivera subsequently amended her date of onset to December 21, 2014, the date on which she fell and injured her back. Rivera's applications were denied at both the initial and reconsideration levels. Thereafter, a hearing was held before an Administrative Law Judge (the "ALJ") on September 28, 2016. On November 29, 2016, the ALJ issued a written decision denying Rivera's applications.

---

[1] Rivera's appeal challenges only the "decision of the Commissioner of Social Security denying [her] application for Title XVI disability benefits for lack of disability."

2

In his decision, the ALJ followed the sequential evaluation process for assessing disability claims.[2] At Step 1, the ALJ determined that Rivera had not been engaged in substantial gainful activity since the claimed onset date. At Step 2, the ALJ determined that Rivera had several severe impairments. He concluded that her diabetes mellitus, however, was not "severe" within the meaning of the Act. The ALJ acknowledged Rivera's complaints of tingling in the lower extremities and diagnosis of diabetic neuropathy but concluded that "the evidence of record does not support a finding that the [Plaintiff] has significant functional limitations related to this condition." At Step 3, the ALJ concluded that Rivera does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1. At Step 4, the ALJ concluded that Rivera has a residual functional capacity ("RFC") to perform medium work, subject to certain specified limitations. The ALJ further found that Rivera did not have the RFC to perform her past relevant work. Finally, at Step 5, ALJ found that Rivera "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Accordingly, the ALJ found that Rivera was not disabled within the meaning of the Act. This appeal followed.

---

[2] Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has a "severe impairment" which limits her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity to perform her past work; (5) if the claimant is unable to perform her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform. 20 C.F.R. 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof with respect to Step 1 through Step 4, while the Commissioner bears the burden of proof as to Step 5. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

On appeal, Rivera challenges the Commissioner's denial of supplemental security income benefits, arguing that the ALJ erred by (1) concluding that she had no significant functional limitations related to her diabetes mellitus and (2) finding that her daily activities were "at a much higher level than [she] asserted at the hearing." The Commissioner, in response, avers that the ALJ's conclusions and findings are supported by substantial evidence in the record. The claims will be addressed *seriatum.*

**Discussion**

**The ALJ's Conclusions Concerning the Severity of Rivera's Diabetes Mellitus**

Rivera first contends that the ALJ erroneously concluded the she had no significant functional limitations as a result of her diabetes mellitus. Invoking the so-called "treating physician's rule," she argues that the ALJ erred by affording "very little weight" to the opinion of Dr. Ovanes Borgonos concerning the severity of her diabetes mellitus.

The following additional facts are relevant to this claim. In support of her applications, Rivera submitted two brief letters from Dr. Borgonos. In the first letter, dated November 18, 2014, Dr. Borgonos listed Rivera's medical and psychiatric conditions (including "uncontrolled diabetes") and stated that she was unable to work because of her various conditions. He further opined that "[s]he is disabled mainly due to her mental health issues." In the second letter, dated October 28, 2017, Dr. Borgonos again listed Rivera's conditions (including "diabetes on insulin") and again asserted in a conclusory fashion that she was "disabled." Rivera also submitted Dr. Borgonos' progress notes and progress notes from her endocrinologist in support of her applications. In those notes, both physicians characterized Rivera's diabetes mellitus as being "uncontrolled," although Dr. Borgonos did not consistently use the adjective "uncontrolled" when referring to her diabetes mellitus.

4

As previously indicated, after considering the available record, the ALJ found that her diabetes mellitus was not severe. The ALJ further considered and afforded "very little weight to" the opinion of Dr. Borgonos that Rivera was disabled and unable to work. The governing regulations and substantial evidence in the record supports the ALJ's decision to afford "very little weight" to Dr. Borgonos' opinion.

Under the treating physician's rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). Dr. Borgonos did not offer a fulsome medical opinion, however, concerning the severity of Rivera's various medical and psychiatric conditions. He listed her medical and psychiatric conditions and then stated in a conclusory fashion that she was disabled and unable to work. It is well settled that a treating physician's statement that a claimant is "disabled" or "unable to work" is not entitled to controlling weight because it represents an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015); *Adamski v. Barnhart*, 404 F. Supp. 2d 488, 492 (W.D.N.Y. 2005). Accordingly, the ALJ properly rejected Dr. Borgonos' opinion that Rivera was disabled and unable to work.

This leaves the question of whether Dr. Borgonos' characterization of her diabetes mellitus as "uncontrolled" was given appropriate weight. The fundamental problem with Rivera's argument in this regard is that it assumes that having "uncontrolled diabetes" necessarily means that one has significant functional limitations due to diabetes. Rivera did not present any evidence to support this assumption. Although Dr. Borgonos and Rivera's endocrinologist characterized

her diabetes mellitus as "uncontrolled," neither physician offered an opinion that Rivera's diabetes mellitus significantly limited her functional abilities or that a person with "uncontrolled" diabetes necessarily has significant functional limitations. Indeed, Dr. Borgonos opined in his first letter that Rivera's depression—not her diabetes mellitus—was the main cause of her disability. Rivera's progress notes also do not reflect any complaints from her about her diabetes mellitus impairing her functional abilities. The month before the hearing, Rivera did report worsening "tingling" and "burning sensation" in her feet to Dr. Borgonos, but she reported at the hearing that she had been prescribed medication that had reduced the pain in her leg and tingling in her foot, "all of it." The progress notes also reflect that Rivera has diabetic shoes, but, again, there is no indication in Rivera's progress notes (or her testimony) that her diabetes mellitus was hindering her ability to stand or walk.

Finally, the ALJ expressly considered all Rivera's diabetes-related symptoms during his analysis at Step 2, and he further considered the impact of Rivera's diabetes mellitus on her RFC at Step 4. *See Rivera v. Colvin*, 592 Fed. Appx. 32, 33–34 (2d Cir. 2015) (holding that, even if ALJ erroneously found that claimant's psychiatric conditions were not severe impairments at Step 2, such error was harmless because the ALJ considered both severe and non-severe impairments as he worked through the later steps).

In sum, Rivera failed to meet her burden of proving that she had significant functional limitations due to her diabetes mellitus. *See Burgess*, 537 F.3d at 128 ("The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four. . . ." [citation omitted]). Accordingly, Rivera's first challenge to the ALJ's decision fails.

**The ALJ's Conclusion Concerning Rivera's Residual Functional Capacity**

Next Rivera challenges the ALJ's conclusion that she had the RFC to perform medium work, subject to certain specified limitations. In particular, she challenges the ALJ's statement that she was functioning at a "much higher level"[3] than she asserted at the hearing based on the disparities between her trial testimony and her Activities of Daily Living questionnaire.[4] A review of the record in its entirety reveals that there is substantial evidence in the record to support the ALJ's RFC determination.

In determining Rivera's RFC, the ALJ chose not to credit Rivera's subjective complaints because they were unsupported or contradicted by other evidence in the record. Generally, credibility determinations such as this are entitled to deference on appeal. *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013). This is particularly true where, as here, the claimant's subjective complaints are inconsistent with the other evidence in the record. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." [citations omitted]).

In this case, there are inconsistencies that cannot be ignored. For example, Rivera submitted an Activities of Daily Living questionnaire. In that questionnaire, she reported that she prepares meals for herself on a daily basis, typically "frozen dinners/microwaved meals and

---

[3] The ALJ stated twice that Rivera's functionality was "higher" than she reported at the hearing and stated only once that her functionality was "much higher" than she reported at the hearing.

[4] Rivera also opines that, based on the ALJ's statements, "it seems as if he is referring to another person's [questionnaire]." Nothing in the record suggests, however, that the ALJ reviewed the incorrect questionnaire. In his decision, the ALJ correctly described the contents of Rivera's questionnaire, including the name of the assisting nurse, the date of completion, and the limitations reported by Rivera therein.

sandwiches." She also reported that she shops for groceries herself. With respect to cleaning, Rivera reported that she was able to do her "[l]aundry and light cleaning," although she needs "help or encouragement" with those activities. At the hearing, however, Rivera testified that her son often helps her with things around the house, and he brings her meals to her because she does not cook. She also testified that her daughter-in-law comes over every weekend to clean. She said that she will "take the broom, the mop" to help, but "I mostly just sleep."

In addition, Rivera claimed that her depression made it difficult for her to concentrate for more than a few minutes and inhibited her ability to read, watch television, and carry on long conversations. Nevertheless, Rivera did not list depression as a mental impairment on her Disability Report. Nor did she appear to have any difficulty concentrating during her interview with the Social Security Administration or at the hearing according to the ALJ. Her mental status exams further reveal that, although she reported being depressed and anxious, she did not have significant functional limitations as a result of those conditions.

Finally, Rivera claimed to be disabled due to a back injury. The ALJ agreed that Rivera had back conditions that qualified as severe, but, as the ALJ correctly observed, Rivera's progress notes also revealed that "her fracture is stable," she "walks with a steady gait with no signs of weakness or ataxia," and she takes only Tylenol for pain. Accordingly, although she had some functional limitations due to her back conditions, the ALJ understandably concluded that she still had some residual functional capacity.

To be certain, the record might support Rivera's claim that she is not functioning at a "much higher" level than that to which she testified at the hearing. This does not preclude a finding, however, that the ALJ's decision concerning Rivera's RFC was supported by substantial

evidence.[5] *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (acknowledging that "[i]t may well be that reasonable minds would disagree as to whether T.B. is disabled," but affirming the Commissioner's denial of benefits where there was substantial evidence in the record to support that decision). "[R]eviewing courts do not demand perfect decisions." *Morgan v. Berryhill*, No. 1:15-cv-00449 (MAT), 2017 WL 6031918, at *5 (W.D.N.Y. Dec. 5, 2017) (quoting *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12–cv–1631 (MAD), 2014 WL 420465, at *8 (N.D.N.Y. Feb. 4, 2014)); *see also Whitaker v. Berryhill*, No. 3:17-cv-1337 (SRU), 2018 WL 4583508, at *13 (D. Conn. Sept. 25, 2018) ("Even in the face of an oversight, the ALJ's decision may be upheld if the error was 'harmless,' that is, if other 'substantial evidence in the record' supports the ALJ's conclusions.").

After reviewing the Parties' submissions, the decision of the ALJ, the transcript of proceedings, and the record of the agency proceedings, it is manifest that there is substantial evidence in the record to support the ALJ's determination that Rivera is not disabled within the meaning of the Act.

**Conclusion**

For all of the foregoing reasons, Rivera's motion [ECF No. 19] is DENIED, and the Defendant's motion [ECF No. 20] is GRANTED. The Clerk shall enter judgment in favor of the Commissioner and close the case.

---

[5] Contrary to the Rivera's suggestion, the ALJ made clear that his RFC determination was based on "the entire evidence of record," not simply the Activities of Daily Life questionnaire.

SO ORDERED

Dated at Bridgeport, Connecticut this 14th day of December 2018.

/s/
Kari A. Dooley
United States District Judge